The plaintiff purchased a motor vehicle from the defendant dealer. The contract to purchase the vehicle contained an agreement to arbitrate disputes. The plaintiff filed an action alleging, among other things, fraud and other torts. The plaintiff resisted arbitration, and the trial court denied the defendant's motion to compel arbitration. The defendant appeals. The basic legal question presented on this appeal is whether the court or an arbitrator should determine the question of the validity of the agreement containing the arbitration provision.
The relevant facts are basically undisputed. Anniston Lincoln Mercury Dodge ("ALMD") is an automobile dealership doing business in Anniston. In February 1995, Su K. Conner purchased a truck from ALMD. Conner was born in South Korea, and although by 1995 she had lived in this country for more than 20 years, she contends she did not have a full understanding of the English language. When she visited ALMD, Conner was accompanied by a friend who is fluent in English. When she purchased the truck, Conner signed a document containing an arbitration clause, which stated, in part:
 "F. THE UNDERSIGNED PURCHASER AND ANNISTON LINCOLN MERCURY DODGE FURTHER AGREE AS FOLLOWS:
 ". . . .
 "2. THAT IN THE EVENT ANY DISPUTES UNDER THE TERMS OF THIS CONTRACT OF SALE ARISE (INCLUDING, BUT NOT LIMITED TO, THE TERMS OF THE AGREEMENT, THE CONDITION OF THE MOTOR VEHICLE SOLD, THE CONFORMITY OF THE MOTOR VEHICLE SOLD TO THE CONTRACT, THE REPRESENTATIONS, PROMISES, UNDERTAKINGS OR COVENANTS MADE BY ANNISTON LINCOLN MERCURY DODGE IN CONNECTION WITH THE SALE OF THE MOTOR VEHICLE, OR OTHERWISE DEALING WITH THE MOTOR VEHICLE, ANY TERMS OF FINANCING IN CONNECTION THEREWITH, OR ANY TERMS OF ANY CREDIT LIFE AND/OR DISABILITY INSURANCE PURCHASED SIMULTANEOUSLY HEREWITH, OR EXTENDED SERVICE OR MAINTENANCE AGREEMENTS), THAT ANNISTON LINCOLN MERCURY DODGE AND THE PURCHASER AGREE TO SUBMIT SUCH DISPUTES TO BINDING ARBITRATION, PURSUANT TO THE PROVISIONS OF [9 U.S.C. § 1 et seq.], AND ACCORDING TO THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN EXISTING IN BIRMINGHAM, ALABAMA."
When Conner purchased the truck, she also bought a credit life insurance policy, which was issued by Ford Motor Life Insurance Company.
In September 1996, Conner filed this action against ALMD. She alleged that the day after she purchased the truck she became dissatisfied with it and that she also learned that day, for the first time she says, that she had purchased the credit life insurance policy; she says she learned of the insurance policy after she showed her brother the documents she had signed in regard to the purchase of the truck. She alleged that she returned to the dealership and explained to the salesman that she was not satisfied with *Page 900 
the truck and told him that she wanted the life insurance policy rescinded, and that ultimately she told the salesman that she wanted to return the truck she had purchased and to get back the vehicle she had traded in. At that point, she alleged, the salesman referred her to the dealership's sales manager. She said the sales manager told her that she would have to go to the bank that had financed the purchase of the truck and ask the bank to cancel the life insurance policy;[1] she said the sales manager then told her to leave the premises or else he would telephone the police. She said she did not leave the premises and that the sales manager telephoned the police. Conner said that when police officers arrived they told her she had done nothing wrong, and she said she left the dealership soon after the police had arrived, in order to pick up her daughter from school.
Conner alleged that ALMD sold her the credit life insurance policy without her knowledge, in violation of § 5-19-20(a) and (b), Ala. Code 1975, and that ALMD arranged with First Alabama Bank to extend credit for her to purchase the truck and in doing so violated § 5-19-6(a). She also alleged that ALMD failed to disclose the existence of the credit life insurance policy (the cost of which was apparently included in the amount financed) and that by failing to disclose committed fraud. Finally, Conner alleged that ALMD committed false imprisonment and assault; this allegation was based on the conduct of ALMD's employees when she returned to the dealership the day after the purchase.
On September 30, 1996, ALMD moved to stay the action and to require Conner to submit her claims to binding arbitration. On November 25, 1996, the trial court entered an order staying the action, except for discovery related to the facts and circumstances surrounding Conner's purchase of the truck and the execution of the sales documents. On June 26, 1997, ALMD renewed its motion to compel arbitration. The trial court denied ALMD's motion to compel arbitration because, it concluded, Conner's inability to understand the English language had caused the parties not to reach a meeting of the minds as to the agreement to arbitrate.
ALMD appeals from the trial court's order denying its motion to compel arbitration, and it asks this Court to direct the trial court to order Conner to submit all of her claims for resolution by binding arbitration.[2] For the reasons discussed below, we agree with ALMD that the trial court erred; therefore, we reverse the order denying the motion to compel arbitration. The question whether the plaintiff should be bound by the arbitration agreement was a question that was required to be submitted and resolved by an arbitrator rather than by a court or a jury.
This case involves the sale of a new motor vehicle that was manufactured outside Alabama and was delivered into Alabama to be sold. It is undisputed that this case is governed by the Federal Arbitration Act. Cf. Hurst v. Tony Moore Imports,Inc., 699 So.2d 1249, 1258 (Ala. 1997) ("Quite obviously, if the intrastate rental of an apartment building is `an element of a much broader commercial market in rental properties,' and is, therefore, subject to congressional regulation under the Commerce Clause, then the intrastate sale of a used motor vehicle would constitute an `individual activity' within a broader `class of activities' subject to federal regulation."). Accordingly, this Court will enforce the arbitration agreement at issue here in accordance with the federal policy expressed in the Federal Arbitration Act and court decisions construing that Act. See Ex parte McKinney, 515 So.2d 693, 698 (Ala. 1987).
Although the trial court correctly recognized that arbitration is a matter of contract interpretation, [3] it concluded that the arbitration *Page 901 
clause signed by Conner did not constitute a contract and, therefore, that Conner was not required to submit her claims to arbitration.[4]
In view of the trial court's conclusion, the question we must first address is not whether the trial court properly applied Alabama contract law in determining that Conner had not effectively agreed to the arbitration clause she signed. Instead, we must first determine a more narrow issue: Who should have decided whether Conner agreed to the terms of the arbitration clause — the circuit court or an arbitrator appointed as provided for by the agreement? Because we conclude that an arbitrator should have decided this issue, we do not address the trial court's application of Alabama contract law.
ALMD argues that this case is governed by Prima Paint Corp.v. Flood Conklin Mfg. Co., 388 U.S. 395,87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and we agree that several of the principles of law set out in Prima Paint are applicable. In Prima Paint, the United States Supreme Court held that when a party claims fraud in the inducement relating to the validity of the arbitration clause itself, an issue that goes to the "making" of the agreement to arbitrate, a court may adjudicate that claim; however, if the claim of fraud in the inducement actually bears upon the entire agreement and upon the activities of the parties in general, then an arbitrator, rather than a court, should adjudicate that claim, examining the making of the contract in its entirety.Id. at 403-04, 87 S.Ct. 1801; see also Jones v.Merrill Lynch, Pierce, Fenner Smith, Inc.,604 So.2d 332 (Ala. 1991).
Although Prima Paint involved a charge of fraud in the inducement of the contract, the rationale of PrimaPaint extends to efforts to rescind contracts on other grounds. See, e.g., Three Valleys Municipal Water Dist. v.E.F. Hutton Co., 925 F.2d 1136, 1139 (9th Cir. 1991). Conner argues that she should not be bound by the arbitration clause contained in her sales document, because, she says, her inability to understand English prevented her from effectively assenting to that clause. This argument falls squarely within the Prima Paint rule.[5] Accordingly, the critical question is whether Conner can attack the validity of the arbitration clause itself without attacking the validity of the contract in its entirety. Although Conner alleges that she has challenged the making of the arbitration agreement itself, we must look beyond the ad hoc arguments of counsel in order to determine whether her claim *Page 902 
actually bears upon the entire agreement and upon the activities of the parties in general. Jones,604 So.2d at 337. ALMD argues that Conner's claims relate to the contract in its entirety and therefore should be resolved by an arbitrator. We agree.
We conclude that Conner's claim goes to the making of the contract in its entirety, rather than just to the arbitration clause itself. The facts of this case are similar to those addressed by the United States Court of Appeals for the Fifth Circuit in Villa Garcia v. Merrill Lynch, Pierce, Fenner Smith, Inc., 833 F.2d 545 (5th Cir. 1987). InVilla Garcia, an investor sued a brokerage firm and several employees, alleging violations of the Securities Exchange Act of 1934. The defendants moved to compel arbitration, based on an arbitration agreement contained in the overall contract signed by the investor. The investor argued, in part, that the arbitration provision in the contract was unenforceable because of his inability to read English, which he said prevented his reading and understanding the contract. The court rejected this argument, stating that "[t]hese alleged facts and the overreaching claim they assertedly support should `be decided by an arbitrator, not the district court, since they go to the formation of the entire [contract] rather than' to the formation of the arbitration provision." Id. at 548 (citations omitted).
Likewise, in this case, Conner's allegation addresses the contract as a whole, rather than the arbitration provision itself. Conner has not alleged that ALMD treated the arbitration clause differently from the way it treated any other provision of the contract; instead, she has merely argued that the arbitration clause was fraudulently induced because ALMD, she says, failed to disclose the existence of that clause. That argument, it seems, is similar to the one advanced in theVilla Garcia case. That argument, in fact, if valid, could apply equally to virtually all of the other provisions of the contract. Cf. Doctor's Associates, Inc. v.Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902
(1996) (arbitration agreements must be given treatment equal to that given to other agreements).
Based on the foregoing, and based on our conclusion that Conner's allegation that she was unable to understand English bears upon the entire agreement, we hold that the trial court should not have decided whether Conner had agreed to the arbitration agreement; instead, that question, if presented, should have been answered by an arbitrator. Therefore, the trial court erred in holding that the arbitration clause was unenforceable. We reverse the order denying arbitration, and we remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, SEE, and LYONS, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
[1] In her complaint, Conner alleges that when she visited the bank, a bank representative told her that the credit life insurance policy could not be cancelled unless ALMD completed the proper papers.
[2] A direct appeal is the proper method to review a trial court's order denying a motion to compel arbitration, in a case where the Federal Arbitration Act applies. See A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990).
[3] See, e.g., AT T Technologies, Inc. v.Communications Workers of America, 475 U.S. 643, 648,106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
[4] The trial court based its ruling solely on its finding of a lack of mutual agreement regarding the making of the arbitration agreement; it did not address the scope of the agreement, i.e., whether, assuming the arbitration agreement itself was valid, the parties intended to submit this particular dispute to arbitration.
[5] We note that courts are divided on how to apply thePrima Paint rule to cases not alleging claims of pure fraudulent inducement. For example, in Cancanon v. SmithBarney, Harris, Upham Co., 805 F.2d 998 (11th Cir. 1986), the United States Court of Appeals for the Eleventh Circuit distinguished claims of "fraud in the factum" from claims of "fraud in the inducement." Specifically, that court held that where a party has alleged fraud in the factum, "i.e., ineffective assent to the contract [in its entirety], the issue is not subject to resolution pursuant to an arbitration clause contained in the contract documents." Id. at 1000; see also Three Valleys Municipal Water Dist.,925 F.2d at 1141 (determining that Prima Paint was limited to challenges seeking to avoid or rescind a contract, not to challenges going to the very existence of a contract that a party claims never to have agreed to).
Other courts have rejected this approach and have held that thePrima Paint rule extends to all challenges aimed at the contract in its entirety. See South Carolina Public ServiceAuthority v. Great Western Coal (Kentucky), Inc.,312 S.C. 559, 561, 437 S.E.2d 22, 24 (1993); C.B.S. EmployeesFederal Credit Union v. Donaldson, Lufkin JenretteSecurities Corp., 912 F.2d 1563, 1566-68 (6th Cir. 1990).
We need not address this split in authority, under the facts of this case. Even if we agreed with those courts holding thatPrima Paint does not require arbitration when a party has challenged the very existence of the entire contract, that simply is not the case here. In Cancanon, supra, for example, the plaintiffs, who could not speak English, alleged that the defendant had falsely told them that the documents they signed merely opened money market accounts but that, in reality, the documents opened accounts that were designed to allow the trading of securities. In the present case, however, Conner understood the basic nature of the sales agreement she signed. The very existence of the contract between the parties is not in dispute; Conner merely contends that she was unaware of certain provisions contained in that contract.