736 So.2d 589 (1999)
NATIONSBANC INVESTMENTS, INC.
v.
Billie Jo Nicole Paramore, by and through her guardian ad litem; and Tony Lee Paramore.
Robert Lipscomb
v.
Billie Jo Nicole Paramore, by and through her guardian ad litem; and Tony Lee Paramore.
Nos. 1971534 and 1971578.
Supreme Court of Alabama.
May 21, 1999.
James C. Huckaby, Jr., Carter H. Dukes, and John W. Scott of Haskell, Slaughter & Young, L.L.C., Birmingham, for appellant NationsBanc Investments, Inc.
John P. Scott, Jr., of Starnes & Atchison, L.L.P., Birmingham, for appellant Robert Lipscomb.
Joseph M. Cloud and Brent L. Parker of Morris, Cloud & Conchin, P.C., Huntsville; and Earl E. Cloud, Jr., of Cloud & Cloud, Huntsville, for appellee Billie Jo Nicole Paramore.
Douglas Rogers, Birmingham, for appellee Tony Lee Paramore.
PER CURIAM.
NationsBanc Investments, Inc., and Robert Lipscomb, defendants in an action pending in the Tuscaloosa Circuit Court, appeal that court's order denying their motions to dismiss or, in the alternative, to stay proceedings and to compel arbitration *590 of the plaintiff's claims. For the reasons outlined below, we reverse and remand with instructions.

Facts and Procedural History
Billie Jo Nicole Paramore, a minor, brought this action through her guardian ad litem, against her father, Tony Paramore, as conservator of her estate, and against NationsBanc and its broker, Robert Lipscomb. Tony Paramore was appointed conservator of the plaintiff's estate on May 10, 1994. At the time, Billie Jo's estate consisted of approximately $380,000. This amount originated from the settlement of a wrongful-death action based on the death of Billie Jo's mother. Pursuant to § 26-2A-154, Ala.Code 1975, the letters of conservatorship specifically limited Tony Paramore's powers in dealing with Billie Jo's estate funds.
Tony Paramore, as conservator, entered into two contracts with NationsBanc establishing a brokerage account for the investment of funds belonging to Billie Jo's estate. The account allowed Paramore, as a NationsBanc client, to "purchase, sell or hold securities." The account privileges outlined in the contract also allowed Paramore to withdraw account funds by writing checks and by using a debit card or automated-teller-machine card. These contracts contained arbitration clauses. Billie Jo alleges that, after Tony Paramore had entered the contracts, he depleted the estate funds to approximately $850.
Billie Jo's original complaint alleged, among other things, that NationsBanc and Lipscomb had conspired with Tony Paramore to violate §§ 19-3-120 and 26-2A-152, Ala.Code 1975, and to deprive her of her money and other property and to make the conservatorship funds available to Tony Paramore. (NationsBanc and Lipscomb filed separate appeals challenging the trial court's refusal to compel arbitration. This opinion addresses both appeals. The two appellants will hereinafter be referred to as "NationsBanc.") After Billie Jo filed her original complaint, NationsBanc moved the trial court to dismiss or, in the alternative, to stay proceedings and to compel arbitration of her claims. The trial court denied the motions, without explanation. NationsBanc thereafter attempted to mediate the dispute, but to no avail, and the case was set for trial.
Because of the mediation efforts, NationsBanc did not seek review of the trial court's denial of arbitration. It was only after the mediation efforts failed that NationsBanc answered the original complaint and the first amendment to that complaint and raised the arbitration issue as an affirmative defense.
Billie Jo filed a second amendment to her complaint, alleging, among other things, claims for money had and received, a breach of fiduciary duty, suppression of a material fact, negligence and wantonness in the handling of the conservatorship account, and conspiracy to deplete the account; these claims were based upon numerous alleged acts of wrongdoing by NationsBanc and Tony Paramore.
NationsBanc then removed the action to a federal district court, but that court remanded the case to the Tuscaloosa Circuit Court. Thereafter, NationsBanc again moved the trial court to dismiss or, in the alternative, to stay proceedings and to compel arbitration of the claims asserted in the second amendment to the complaint. After holding a hearing, the court denied the motions.
On appeal, NationsBanc argues that the two brokerage contracts containing arbitration clauses and signed by Tony Paramore come under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), because, it says, they deal with "interstate commerce," and it argues that the FAA requires a court to dismiss an action pending arbitration of any claims covered by the arbitration agreement.
Billie Jo makes alternative arguments on the arbitration issue. First, she argues that Tony Paramore, because he had at most a fourth-grade reading level, lacked the requisite capacity to enter into and *591 understand the contracts. Therefore, she argues, the contracts are invalid. Second, Billie Jo argues that Tony Paramore, by entering into the contracts, created a conflict between his personal interests and his fiduciary responsibilities as conservator. She argues that this conflict of interest made the contracts voidable under § 26-2A-150, Ala.Code 1975. Third, Billie Jo argues that Tony Paramore lacked the authority to enter into the subject contracts because, in his letters of conservatorship, the probate court had limited his authority. In response to these arguments, NationsBanc argues that they raise the question whether the contracts are voidable, which, NationsBanc argues, is a question for an arbitrator to decide.
Because the trial court did not discuss, or even state, its specific reasons for denying arbitration, we address each of the above-stated arguments[1] and we instruct the trial court as to the impact of the issues raised by these arguments. If the trial court denied arbitration based on Billie Jo's first two arguments, or on either of them, then its order denying arbitration was error and arbitration should be compelled. However, if the trial court denied arbitration based on Billie Jo's third argument, then the order denying arbitration was correct.

Arbitration

I.
This Court has written:
"[W]hen a party claims fraud in the inducement relating to the validity of the arbitration clause itself, an issue that goes to the `making' of the agreement to arbitrate, a court may adjudicate that claim; however, if the claim of fraud in the inducement actually bears upon the entire agreement and upon the activities of the parties in general, then an arbitrator, rather than a court, should adjudicate that claim, examining the making of the contract in its entirety."
Anniston Lincoln Mercury Dodge v. Conner, 720 So.2d 898, 901 (Ala.1998). In Conner, the plaintiff claimed to be challenging the validity of an arbitration provision in a contract, 720 So.2d at 901, arguing that "her inability to understand English prevented her from effectively assenting to that clause." Id. The trial court agreed and found that the plaintiffs "inability to under-stand the English language had caused the parties not to reach a meeting of the minds as to the agreement to arbitrate." Id. at 900.
We reversed the trial court's order, stating that "we must look beyond the ad hoc arguments of counsel in order to determine whether [the plaintiffs] claim actually bears upon the entire agreement" or just the arbitration clause. Id. at 901-02. Accordingly, we determined that the plaintiffs claim concerned "the making of the contract in its entirety, rather than just... the arbitration clause itself," and held that arbitration should have been compelled. Id. at 902.
The facts of Conner were somewhat similar to the facts of this case. The plaintiff in Conner argued that she had been unable to understand provisions of the contract. In her brief to this Court, Billie Jo has questioned "whether Tony Lee Paramore[, given his fourth-grade reading level,] possessed the requisite contractual capacity to assent to the terms and conditions of the brokerage agreements containing the arbitration provisions." (Emphasis supplied.) Billie Jo argues that Paramore could not understand the brokerage contracts and could not understand the arbitration provisions within those contracts. Therefore, Billie Jo's argument clearly concerned the making of the contracts, and, in accordance with Conner, the question whether Tony Paramore could understand the contracts and their provisions would be for the arbitrator to *592 decide. If the trial court based its denial of arbitration on this ground, then it erred and it is instructed to compel arbitration.

II.
Billie Jo also alleges, in her brief to this Court, that when Tony Paramore entered into the contracts a conflict of interest arose between his "personal interest and his fiduciary responsibilities imposed on him by statute," and she alleges that that conflict existed as he allegedly depleted the funds. Significantly, in making this argument Billie Jo is not alleging that the contract did not exist, only that Tony Paramore created a conflict of interest by entering into the contract and that the result of that conflict was his allegedly improper depletion of estate funds.
Section 26-2A-150, Ala.Code 1975, governs transactions affected by a conservator's conflict of interest. It states: "[A]ny... transaction involving the estate being administered by the conservator which is affected by a substantial conflict between fiduciary and personal interests is voidable unless the transaction is approved by the court after notice as directed by the court." (Emphasis supplied.)
This Court has recognized that "`[i]f the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is "voidable" because the parties have agreed to arbitrate the dispute.'" Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613, 616 (Ala.1994), quoting Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136, 1140 (9th Cir.1991). The arbitration provisions of the brokerage agreements stated:
"a. Arbitration is final and binding on the parties.
"b. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
". . . .
"Client [Tony Lee Paramore] understands and agrees that all controversies between Client and ... NationsSecurities and [its] principals and agents (including affiliated corporations) arising out of or concerning any of Client's accounts, orders, or transactions, or the construction, performance, or breach of this or any other agreement between the parties, whether entered into before or after the date an account is opened, shall be determined by arbitration only before the New York Stock Exchange, Inc.; the National Association of Securities Dealers, Inc.; or the Municipal Securities Rule Making Board, as Client may elect."
Clearly, the arbitration provisions are very broad and are designed to encompass any controversy arising out of the relationship between Tony Paramore and NationsBanc or its agents. Billie Jo is not arguing that the contract is void, but, instead, that § 26-2A-150 was implicated and that the contracts are therefore "voidable." Therefore, if the trial court denied arbitration on this ground (i.e., on the ground that Tony Paramore had a conflict of interest), then the denial was error, because, in accordance with Crisp, an arbitrator should decide whether these agreements are "voidable" on the basis of a conflict of interest. Accordingly, if the trial court relied on this ground, then it erred, and arbitration should have been compelled.

III.
Finally, we consider Billie Jo's final argument, that Tony Paramore lacked the authority to enter into the contracts. When the probate court appointed Tony Paramore as conservator of the plaintiffs estate, it issued letters of conservatorship, in accordance with Alabama law. Those letters invoked § 26-2A-154 and limited Paramore's conservatorship powers. Specifically, the letters of conservatorship stated that Tony Paramore was
"authorized and directed to exercise all powers and duties conferred under Ala. Code [1975, § ] 26-2A-152 ... limited only by the following:

*593 "1. [The court awarded the plaintiff $750.00 per month to supplement the cost of her care and support. The court charged Tony Lee Paramore as being accountable for the use of these funds.]
"2. Any purchases of real property with funds of the estate shall be approved by this Court upon application by the Conservator....
"3. Any other purchases with funds of the estate, with the exception of those purchases for the ordinary care and support of the child with the monies awarded in Paragraph One herein, shall be specifically authorized and approved by this Court upon application made by the Conservator."
(Emphasis supplied.) Because of the limitations contained within these letters, Billie Jo argues that Tony Paramore had no authority to enter into the brokerage contracts containing the arbitration provisions.
In Crisp, this Court recognized, as other courts have, that there is a difference between "`challenges seeking to avoid or rescind a contract'" and "`challenges going to the very existence of a contract that a party claims never to have agreed to.'" Crisp, 646 So.2d at 616, quoting Three Valleys Municipal Water District, 925 F.2d at 1140 (emphasis in Three Valleys Municipal Water District). The former are subject to arbitration. Id. As for the latter, we have adopted the reasoning that "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate," and that "[o]nly a court can make that decision." Id. at 616-17 (emphasis in original).
Our rationale in Crisp is applicable to this case. In Crisp, Edward Pope was an employee of Shearson Lehman. Pope had sold the plaintiffs "working interest securities" in a development project. The plaintiffs signed a number of client agreements as part of the transactions with Pope. Those agreements contained broadly worded arbitration provisions. The plaintiffs alleged that Pope had promised his personal influence in attaining adequate capital for the project. However, the project eventually failed and the plaintiffs sustained financial losses. As a result, the plaintiffs sued Shearson Lehman, alleging that it had interfered with Pope's involvement in the project and thereby had caused its failure.
Shearson Lehman sought to compel arbitration of the dispute, pursuant to the arbitration provisions. The plaintiffs argued that arbitration was inappropriate "absent a finding or stipulation that Pope acted in a representative capacity [for Shearson Lehman] in effecting the transactions involving the working interest securities." Id. at 615. Because they dealt with Pope in a nonrepresentative capacity, the plaintiffs argued, "no contractual relationship ever existed between the plaintiffs and Shearson [Lehman]." Id. at 615-16. Therefore, the plaintiffs argued, they should not be compelled to arbitrate their dispute with Shearson Lehman. Id.
Shearson Lehman argued that the contracts were broad enough to invoke the arbitration clauses. However, Shearson Lehman also argued that the contracts were narrow enough to preclude their liability to the plaintiffs based upon the doctrine of respondeat superior or the principal-and-agent doctrine. We recognized that Shearson Lehman's argument was akin to "an assertion that Pope lacked the authority to bind it in a contractual agreement with the plaintiffs." Id. at 616.
In light of that argument, we stated that "a number of well-reasoned authorities have held that the question of the signatory's authority and agency is a threshold issue that must be adjudicated before arbitration can proceed." Id. (emphasis omitted). In other words, "whether a particular individual has authority to bind a party must be determined by the court, not by an arbitrator." Id. at 617, quoting Three *594 Valleys Municipal Water District, 925 F.2d at 1140-41 (citations omitted.) Therefore, in Crisp, we held that "[t]he question of Pope's representative capacity or authority in effecting these transactions is ... a threshold issue requiring resolution before an order compelling arbitration would be appropriate." Id. at 617.
Here, Billie Jo's argument that Tony Paramore lacked the authority to enter into the subject contracts also presents a question that the court must decide before making a determination regarding arbitration. Billie Jo's challenge to Tony Paramore's authority deals with the very existence of the contract. Counsel for Billie Jo stated in oral argument before this Court that they planned on filing a summary-judgment motion based on this argument. The trial court must determine if the contract ever existed, in light of her allegation. Only after making this determination could the trial court properly deal with the issue of arbitration.
The order of the trial court is reversed and the case is remanded. The trial court is instructed to issue an order explaining its findings as to the arguments addressed in this opinion. Should the trial court accept NationsBanc's arguments that the contracts are merely voidable, because of Tony Paramore's alleged limited education or his alleged violation of § 26-2A-150, Ala.Code 1975, then it is instructed to grant NationsBanc's motion to compel arbitration. However, should the trial court accept Billie Jo's argument that Tony Paramore lacked the authority to enter into the subject contracts, then it is instructed to deny NationsBanc's motion to compel arbitration.
Accordingly, the order of the trial court is reversed, and the cause is remanded with instructions.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, and BROWN,[*] JJ., concur.
KENNEDY and JOHNSTONE,[*] JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the opinion reversing and remanding with instructions. The record proves that the fiduciary who purported to make the contract containing the arbitration agreement lacked authority to bind Billie Jo to the contract.
The opinion recognizes that "Billie Jo argues [in her third argument] that Tony Paramore lacked the authority to enter into the subject contracts because, in his letters of conservatorship, the probate court had limited his authority." The opinion further recognizes that "if the trial court denied arbitration based on Billie Jo's third argument, then the order denying arbitration was correct." 736 So.2d at 591.
This Court is bound to affirm if the trial court is right for any reason. Justice Houston aptly wrote in Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala. 1988):
"There is a rather obvious fundamental difference in upholding the trial court's judgment and reversing it; this Court will not reverse the trial court's judgment on a ground raised for the first time on appeal, Costarides v. Miller, 374 So.2d 1335 (Ala.1979), even though it affirms judgments on bases not asserted in the trial court, Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980)." (Emphasis in original.) *595 A fortiori the trial court must be affirmed on a valid basis that was asserted in the trial court.
NOTES
[1] Our discussion of these issues makes it unnecessary to address the other issues the parties have raised.
[*] Although Justice Brown and Justice Johnstone were not members of this Court when this case was orally argued, they had already been elected to the Court at that time and they were present in the courtroom on the day of oral arguments and heard these oral arguments.