790 So.2d 956 (2001)
JOHNNIE'S HOMES, INC., d/b/a Steel City Mobile Homes
v.
Melvin HOLT.
1991404.
Supreme Court of Alabama.
January 12, 2001.
*957 J. Mitchell Frost, Jr., and Champ Lyons III of Ferguson, Frost & Dodson, L.L.P., Birmingham, for appellant.
Garve W. Ivey, Jr., of Ivey & Ragsdale, Jasper, for appellee.
HOOPER, Chief Justice.
Melvin Holt ("Melvin") sued Johnnie's Homes, Inc., d/b/a Steel City Mobile Homes, alleging breach of contract, breach of warranty, and fraud, all in connection with Melvin's purchase of a mobile home. He later amended his complaint to dismiss the claim of breach of contract and to include a claim of damages for mental anguish and to assert a claim alleging fraud in the procurement of an arbitration provision that was contained in the purchase contract. Melvin also, in the same action, sued Destiny Industries, Inc., the manufacturer of the mobile home; the trial court dismissed the claims against Destiny Industries. Johnnie's Homes moved to compel arbitration of the plaintiff's claims, pursuant to the arbitration agreement contained in the purchase contract and signed by Melvin, but the trial court denied the motion. Johnnie's Homes appeals from the order denying the motion to compel arbitration. We reverse and remand.[1]
Melvin, who has a sixth-grade education, contracted to purchase from Johnnie's Homes, located in Alabama, a mobile home that had been manufactured in Georgia. When he entered the contract, he was accompanied by his wife, Patricia, who has a seventh- or eighth-grade education. Although Melvin had six years of education, he is illiterate. His wife Patricia can read. Patricia "did the paperwork" for Melvin regarding the contract. He testified in his deposition that Patricia read the contract before he signed it and that he assumed she had read the entire contract. Melvin said he relied on Patricia to "check the figures and everything" listed in the contract, but that only he signed the document as a purchaser because Johnnie's Homes, in financing the sale, was relying on his credit. In the negotiations for the sale, Johnnie's Homes was represented by one of its employees, Jack Smith. Melvin never asked anyone to read the contract to him, and he admitted in his deposition that he would have been embarrassed to admit to Smith that he could not read or understand what was contained in the contract; therefore, he said, he and Patricia believed Smith's representations about the contract. Melvin testified that his wife never expressed any concern about the terms of the contract, including the arbitration provision. However, Patricia stated that she merely looked at the contract, that she did not read it. She testified in her deposition that Smith explained to her and Melvin that it was a standard contract, and she said that she could not recall that she or Melvin asked Smith any questions. She also stated that she recalled that Smith showed them only one page of the contract the page detailing the priceand *958 that Smith gave them no choice as to what papers Melvin had to sign in order to purchase the mobile home. At some point, Patricia said, she handed the contract to Melvin; that he took too long to look at it; and that Smith grabbed it and told them that Johnnie's Homes promised to do whatever was in the contract. Melvin, she said, then signed the contract.
At some point after the contract had been signed and the mobile home delivered and set up, various problems with the mobile home surfaced. Melvin claims that Smith and Johnnie's Homes virtually ignored his complaints and that, as for the few complaints they did acknowledge, they performed substandard repairs. Patricia took out the contract, reread it, and noticed for the first time the following arbitration provisions:
"15. WAIVER OF JURY TRIAL: I hereby waive any right to a trial by jury that I have in any subsequent litigation between me and the Seller, or me and an assignee of the Seller, where such litigation arises out of, is related to, or is in connection with any provision of this Contract....
"16. ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C., Section 1.... The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract...."
(C.R. 321-22.) Patricia asked Melvin what arbitration was, but he told her he did not know. Melvin later asked a friend about it. He says that arbitration was never explained to him and Patricia until after they had begun having problems with the mobile home. Melvin testified that had he and Patricia known about the arbitration provision, he would not have signed the contract.
Melvin sued Johnnie's Homes, alleging breach of contract, breach of warranty, and fraud. Johnnie's Homes moved the trial court to stay the proceedings and compel arbitration, but the trial court denied its motion. Johnnie's Homes appeals from the order denying its motion to compel arbitration.
Johnnie's Homes argues that the trial court erred in refusing to compel arbitration because, it says, Melvin knowingly and willingly agreed to arbitrate, by signing the mobile-home purchase contract, which contains an arbitration provision Johnnie's Homes says is enforceable. Specifically, Johnnie's Homes argues:
(1) That the arbitration provision is enforceable, pursuant to the Federal Arbitration Act, because the purchase of the *959 mobile home was a transaction involving interstate commerce;
(2) that Melvin voluntarily, knowingly, and willingly agreed to submit his claims to arbitration;
(3) that an arbitrator should decide whether Melvin agreed to arbitrate his claims;
(4) that the arbitration agreement requires Melvin to submit all of his claims to arbitration; and,
(5) that general contract defenses do not prohibit enforcement of the arbitration agreement.
Melvin responds by contending:
(1) That this transaction does not substantially affect interstate commerce and, therefore, that this case is controlled by § 8-1-41(3), Ala.Code 1975, and not the Federal Arbitration Act;
(2) that the arbitration provision is not valid and enforceable and, thus, that the trial court properly denied the motion to compel arbitration; and,
(3) that the trial court should order a jury trial because, he argues, there exists a material issue of fact as to whether he made a valid and enforceable agreement to arbitrate.
For purposes of clarity, we will address these issues:
(1) Whether Melvin's purchase of the mobile home was a transaction involving interstate commerce;
(2) whether Melvin knowingly, voluntarily, and willingly waived his right to a jury trial;
(3) who should decide whether Melvin entered a valid and enforceable arbitration agreement; and,
(4) whether general contract defenses prohibit enforcement of the arbitration agreement.

1. Interstate Commerce
This Court stated in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000):
"The FAA, at 9 U.S.C. § 1, defines `commerce,' as that term is used within the FAA as including `commerce among the several States or with foreign nations.' Section 2 declares arbitration agreements in `a contract evidencing a transaction involving commerce' to be valid and enforceable, `save upon such grounds as exist at law or in equity for the revocation of any contract.'"
775 So.2d at 760.
In Sisters, this Court concluded that the party seeking to enforce an arbitration agreement had not shown that the transaction between the parties substantially affected interstate commerce. The transaction involved a contract by which an out-of-state contractor was to perform renovation work on a chapel in Alabama owned by an order of Catholic nuns. The nuns sued the contractor. The record did not affirmatively indicate that the contractor had leased or purchased tools and equipment from out-of-state; it also did not show that the contractor had entered other agreements with out-of-state vendors specifically for the project it had contracted to perform for the plaintiff. Nor did the record affirmatively indicate the ratio of out-of-state materials and employees the defendant used to in-state materials and employees the defendant used. Furthermore, the subject of the renovation project was, by its very nature, incapable of being transported across state lines. See Sisters, 775 So.2d at 765.
This case is factually different from Sisters, because the evidence indicates that the transaction involved in this case had a "substantial effect" on interstate commerce. The mobile home was manufactured in Georgia and was subsequently *960 transported to Alabama, where it was purchased and set up.
Melvin argues that if any interstate commerce occurred at all in connection with this case, it occurred in the transaction between the Georgia manufacturer and the Alabama dealer, not between the Alabama dealer and the Alabama buyer. As Johnnie's Homes points out, Melvin makes this argument for the first time on appeal; thus, we cannot consider it. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992). Therefore, we conclude that the purchase of the mobile home had a substantial effect on interstate commerce and, thus, that the motion to compel arbitration is governed by the Federal Arbitration Act, not § 8-1-41(3), Ala.Code 1975.

2. Whether Melvin Knowingly, Voluntarily, and Willingly Waived His Right to a Jury Trial
Melvin does not deny that he signed the contract containing the arbitration provision; he argues that he was not notified that the contract included the arbitration provision and that he was not given the provision. Johnnie's Homes contends that it had no duty to inform Melvin that the contract included the arbitration provision and that it did not owe him an explanation of its terms; Johnnie's Homes says that neither it nor Smith knew Melvin was illiterate.
A dealer is under no duty to disclose, or explain, an arbitration clause to a buyer. Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497 (Ala. 1999) (citing Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1174 (Ala.1999), and Jim Burke Auto., Inc. v. Murphy, 739 So.2d 1084, 1087 (Ala.1999)). Thus, Johnnie's Homes and Smith owed no special duty to notify Melvin that the agreement contained an arbitration provision or to explain to him the substance of that provision.
Melvin argues that his illiteracy and his wife's semiliteracy should render the arbitration agreement invalid; this argument is without merit. In Mitchell Nissan, Inc. v. Foster, 775 So.2d 138 (Ala.2000), this Court addressed a similar argument:
"Foster argues that he should be relieved of this contractual obligation because he has only a sixth-grade reading level. However, this rule has long been established in Alabama:
"`[A] person who signs an instrument without reading it, when he can read, can not, in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents; and the same rule [applies] to one who can not read, if he neglects to have it read, or to enquire as to its contents.'

Beck & Pauli Lithographing Co. v. Houppert and Worcester, 104 Ala. 503, 506, 16 So. 522, 522 (1894) (emphasis added [in Mitchell Nissan]). Accord Gaskin v. Stumm Handel GmbH, 390 F.Supp. 361, 366 (S.D.N.Y.1975) (`"If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."'). Foster was aware that he was signing a contract to purchase the automobile, and he does not allege that his signature was procured by fraud, deceit, or misrepresentation. Although Foster was aware of his limited reading ability, he did not ask his relatives who had accompanied him, or a representative of Mitchell Nissan, to read the agreement to him. Moreover, Foster did not tell a representative of Mitchell Nissan that he was unable to read or to understand any portion of the contract. Accordingly, *961 Foster cannot avoid his contractual obligation by now asserting that he could not read the contract or understand it. See id."
775 So.2d at 140.
Similarly, Melvin cannot avoid enforcement of the arbitration provision merely on the basis that he could not read what he was signing. He admits in his deposition that he would have been embarrassed to tell Smith that he was illiterate, and his wife admits in her deposition that she did not tell Smith that Melvin was illiterate because her doing so would have embarrassed Melvin. Thus, neither Melvin nor Patricia informed Smith nor Johnnie's Homes that their reading ability was limited, and neither Smith nor Johnnie's Homes had independent knowledge that would have led them to believe they needed to point out the arbitration provision or to explain it. Moreover, Patricia freely admits that she merely looked at the contract that she did not read itand Melvin admits that he relied on his wife to "do all of the paperwork" in regard to looking over the agreements and checking all of the numbers. In short, Johnnie's Homes and Smith did all they were obligated to do under the law to facilitate Melvin's purchase of the mobile home. Melvin cannot now avoid one particular provision of the contract simply because he and his wife had a limited ability to read and comprehend.

3. Who Should Decide Whether Melvin Entered a Valid and Enforceable Arbitration Agreement?
Johnnie's Homes contends that an arbitrator should decide whether Melvin agreed to arbitrate his claims, because, it contends, it treated the arbitration provision the same way it treated all other provisions of the contract and, it says, Melvin's illiteracy bears upon his comprehension of the entire contract, not just the arbitration agreement. Melvin contends that § 4 of the Federal Arbitration Act mandates that the court, not an arbitrator, should decide such controversies; that section provides:
"The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.... Where such an issue is raised, the party alleged to be in default may ... demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury...."
(Emphasis suggested by Melvin Holt.)
Anniston Lincoln Mercury Dodge v. Conner, 720 So.2d 898 (Ala.1998), involved a defendant, Conner, who had been born in South Korea. Although by 1995 she had lived in this country for more than 20 years, she alleged that when she purchased her truck from Anniston Lincoln Mercury Dodge ("ALMD"), she did not have a full understanding of the English language. When she visited ALMD, Conner was accompanied by a friend who was fluent in English. The purchase contract for the truck contained an arbitration provision. Conner sued. The trial court denied ALMD's motion to compel arbitration because it concluded that Conner's inability to understand the English language had caused the parties not to reach a meeting of the minds as to the agreement to arbitrate. This Court stated:
"The question whether the plaintiff should be bound by the arbitration agreement was a question that was required to be submitted and resolved by *962 an arbitrator rather than by a court or a jury.
". . . .
"Although the trial court correctly recognized that arbitration is a matter of contract interpretation, it concluded that the arbitration clause signed by Conner did not constitute a contract and, therefore, that Conner was not required to submit her claims to arbitration.
"... [W]e must first determine [this] issue: Who should have decided whether Conner agreed to the terms of the arbitration clausethe circuit court or an arbitrator appointed as provided for by the agreement? ...
"ALMD argues that this case is governed by Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and we agree that several of the principles of law set out in Prima Paint are applicable. In Prima Paint, the United States Supreme Court held that when a party claims fraud in the inducement relating to the validity of the arbitration clause itself, an issue that goes to the `making' of the agreement to arbitrate, a court may adjudicate that claim; however, if the claim of fraud in the inducement actually bears upon the entire agreement and upon the activities of the parties in general, then an arbitrator, rather than a court, should adjudicate that claim, examining the making of the contract in its entirety. Id. at 403-04, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270; see also Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332 (Ala.1991).
"Although Prima Paint involved a charge of fraud in the inducement of the contract, the rationale of Prima Paint extends to efforts to rescind contracts on other grounds. See, e.g., Three Valleys Municipal Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1139 (9th Cir.1991). Conner argues that she should not be bound by the arbitration clause contained in her sales document, because, she says, her inability to understand English prevented her from effectively assenting to that clause. This argument falls squarely within the Prima Paint rule. Accordingly, the critical question is whether Conner can attack the validity of the arbitration clause itself without attacking the validity of the contract in its entirety. Although Conner alleges that she has challenged the making of the arbitration agreement itself, we must look beyond the ad hoc arguments of counsel in order to determine whether her claim actually bears upon the entire agreement and upon the activities of the parties in general. Jones, 604 So.2d at 337. ALMD argues that Conner's claims relate to the contract in its entirety and therefore should be resolved by an arbitrator. We agree.
"... The facts of this case are similar to those addressed by the United States Court of Appeals for the Fifth Circuit in Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 833 F.2d 545 (5th Cir.1987). In Villa Garcia, an investor sued a brokerage firm and several employees, alleging violations of the Securities Exchange Act of 1934. The defendants moved to compel arbitration, based on an arbitration agreement contained in the overall contract signed by the investor. The investor argued, in part, that the arbitration provision in the contract was unenforceable because of his inability to read English, which he said prevented his reading and understanding the contract. The court rejected this argument, stating that `[t]hese alleged facts and the overreaching claim they assertedly support should "be decided by an arbitrator, not the district court, since they go to the formation of *963 the entire [contract] rather than" to the formation of the arbitration provision.' Id. at 548 (citations omitted).
"Likewise, in this case, Conner's allegation addresses the contract as a whole, rather than the arbitration provision itself. Conner has not alleged that ALMD treated the arbitration clause differently from the way it treated any other provision of the contract; instead, she has merely argued that the arbitration clause was fraudulently induced because ALMD, she says, failed to disclose the existence of that clause. That argument, it seems, is similar to the one advanced in the Villa Garcia case. That argument, in fact, if valid, could apply equally to virtually all of the other provisions of the contract. Cf. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (arbitration agreements must be given treatment equal to that given to other agreements).
"Based on the foregoing, and based on our conclusion that Conner's allegation that she was unable to understand English bears upon the entire agreement, we hold that the trial court should not have decided whether Conner had agreed to the arbitration agreement; instead, that question, if presented, should have been answered by an arbitrator. Therefore, the trial court erred in holding that the arbitration clause was unenforceable...."
720 So.2d at 900-02 (emphasis added) (footnotes omitted.)
Other than the fact that Conner's first language was not English and that Melvin is illiterate, the facts of Conner's case and the facts of this case are virtually the same: neither Conner nor Melvin Holt has a working command of the written English language; this fact, each of them alleged, hindered their ability to read, understand, and comprehend the terms of their respective contracts. Given these similarities, the result should also be the same: Because Melvin's claim goes to the making of the entire contract, not just the arbitration provision, and because he does not allege that Smith and Johnnie's Homes treated the arbitration provision any differently from the way Johnnie's Homes treated any other provision of the contract, the question whether Melvin, in signing the contract, agreed to arbitrate his claims should be decided by an arbitrator, not a court. Thus, the trial court improperly denied the motion to compel arbitration. Johnnie's Homes also argues that Melvin should be compelled to submit all of his claims to arbitration. Because we have decided that, given the specific nature of Melvin's claim, it is not the proper role of the courts to determine whether a valid and enforceable contract exists, by necessity we do not reach this particular issue, which is, instead, dependent on the arbitrator's ultimate determination of the question whether the contract is valid and enforceable.

4. Whether General Contract Defenses Prohibit Enforcement of the Arbitration Agreement
Melvin contends that the arbitration agreement is unenforceable because, he argues, it is unconscionable, it is a contract of adhesion, and there is no mutuality of remedies. Johnnie's Homes argues that none of those defenses applies.
First, Johnnie's Homes contends our caselaw has held that arbitration agreements are not unconscionable. In Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala.2000), this Court addressed this very issue in terms of the burden of proof:
"Gary also argues that the clauses are unconscionable. However, Gary's affidavit states only that he has a 10th-grade education, that he did not know *964 the arbitration clauses existed until his attorney informed him about them, that no one at [the dealership] advised him of the existence of the arbitration clauses and what they meant, that he does not know what arbitration is, and that he was given nothing in exchange for being required to sign an arbitration provision. Gary had the burden of proving that the arbitration clauses were unconscionable. [Ex parte] Napier, 723 So.2d [49] at 53 [(Ala.1998)]. He did not present substantial evidence that would support a finding that they were. See Napier, [Ex parte Parker, 730 So.2d 168 (Ala.1999)], and [Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala.1999)]. Therefore, we conclude that the arbitration clauses are enforceable as to Gary."
774 So.2d at 529 (footnote omitted.) Melvin provided essentially only the same quantum of proof that Gary provided: Evidence that he had a sixth-grade education; that he did not know the arbitration clause existed until after Patricia read the contract again at home; that no one at Johnnie's Homes informed him of the existence, or the substance, of the arbitration provision; and that he was not aware that he was given anything in return for signing the arbitration agreement. Presenting only this evidence, Melvin, like Gary, has failed to carry his burden of producing substantial evidence of unconscionability. Thus, we conclude that the arbitration provision is enforceable against him.
Second, Johnnie's Homes states that "[i]n Gary, this Court did not even address the plaintiffs argument regarding adhesion because it had rejected such an argument on numerous [previous] occasions." In Gary, this Court reiterated that in regard to arbitration agreements, certain defensesincluding the defense that an arbitration agreement is a contract of adhesionare without merit. See Gary, citing Ex parte McNaughton, 728 So.2d 592 (Ala.1998), cert. denied, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999); Ex parte Napier, 723 So.2d 49 (Ala.1998); Ex parte Parker, 730 So.2d 168 (Ala.1999); and Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala.1999).
Third, Johnnie's Homes contends that this Court has held that the doctrine of mutuality of remedies is not even applicable to disputes regarding the validity of arbitration agreements, but that that doctrine is "limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which the ultimate redress is sought," quoting McNaughton, 728 So.2d at 598. In McNaughton, we explained:
"`A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result. See Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1014 (M.D.Ala.1997) (`[A]rbitration is not a remedy, but a choice-of-forum in which to seek remedies (just as a jury trial is no more or less a remedy than a bench trial)....'). Thus, an arbitration proceeding is not a remedy.'"
728 So.2d at 598. Thus, Melvin's contention that the lack of mutuality of remedies invalidates the arbitration agreement is without merit.
Finally, Johnnie's Homes contends that Melvin's argument of financial hardship is without merit. In Wampler, this Court stated:
"Because the general principles of Alabama contract law do not excuse performance on grounds of financial hardship, we cannot allow a party's poverty, standing alone and independent of other considerations *965 justifying a finding of unconscionability, to constitute a defense to enforcement of an arbitration agreement. [Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 37 (Ala.1998)]."
749 So.2d at 416. Although the record contains evidence indicating Melvin would have to pay a $2,000 fee to have his claims arbitrated and evidence indicating he has a limited financial capacity, this evidence standing aloneis not enough to persuade us to rule in Melvin's favor without some other showing that the arbitration provision is unconscionable. Some arbitration provisions permit the arbitrator to order the other party to pay all the fees or to pay a partial amount, depending on who wins and depending on the financial condition of the claimant. See generally Ex parte Dan Tucker Auto Sales, Inc., supra. Therefore, Melvin has failed to show that general contract defenses should prohibit enforcement of the arbitration provision against him.

Summary
In conclusion, this case does, indeed, present a transaction involving interstate commerce; thus, the Federal Arbitration Act applies to preempt Alabama law, which otherwise would bar the enforcement of the arbitration provision, see § 8-1-41(3), Ala.Code 1975. Smith and Johnnie's Homes did not have a duty to disclose to Melvin the existence, or the substance, of the arbitration provision, especially in light of the fact that neither Melvin nor Patricia put Smith or Johnnie's Homes on notice that Melvin, as the signer of the contract, was illiterate. Furthermore, according to the rule established in Conner, because Melvin's illiteracy goes to the question of the formation of the entire contract and not just the arbitration provision, it is properly the role of an arbitrator to determine the issue whether he, in signing the contract, agreed to arbitrate his claims. The determination of the question whether Melvin should be forced to submit all of his claims to arbitration will depend on the arbitrator's decision as to whether a valid and enforceable contract exists. Finally, general contract defenses do not prohibit enforcement of the arbitration agreement against Melvin. Therefore, the trial court erred in denying the motion of Johnnie's Homes to compel arbitration.
REVERSED AND REMANDED.
MADDOX, HOUSTON, SEE, and BROWN, JJ., concur.
JOHNSTONE, J., concurs in part and concurs in the result in part.
LYONS, J., recuses himself.
JOHNSTONE, Justice (concurring in part and concurring in the result in part).
I concur in the holding that, because the record contains substantial and uncontradicted evidence that this mobile home moved in interstate commerce from Georgia to Alabama, this transaction is governed by the Federal Arbitration Act.
On the issue of whether the court or the arbitrator should decide Holt's remaining challenges to the arbitration agreement, my analysis is that the court should decide the challenges and that, under the law and facts of this case, the court should reject the challenges and require arbitration. Specifically, my interpretation of Holt's argument in his brief to us is that he is challenging only the making of the arbitration agreement itself and not the making of the whole contract which contains the arbitration agreement. Thus, the Federal Arbitration Act, and specifically 9 U.S.C. § 4, and all of the controlling precedents require that the court decide the challenge. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), Prima Paint Corp. v. Flood & *966 Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454 (Ala.2000).
Holt challenges the making of the arbitration agreement itself, first, on the ground that he could not read it and the salesman did not tell him about it when he signed the contract. I concur in the analysis in the main opinion on the merits of this challenge. A court addressing this challenge would be obliged to reject it as a matter of law on the undisputed facts. I note that, while the main opinion recites that the salesman grabbed the papers from Holt when Holt took too long looking at them, none of the briefs argue this fact, and Holt's brief does not argue that the salesman prevented Holt from reading the contract.
Holt's last challenge to the arbitration agreement is that it is unconscionable. Holt does not demonstrate unconscionability in his argument. Thus the court deciding this challenge to the arbitration agreement would be obliged to reject it as a matter of law applied to undisputed facts.
NOTES
[1] Destiny Industries is not a party to this appeal.