Linda L. PITCHFORD and Jerry L. Hall, Plaintiffs,

v.

AMSOUTH BANK, a corporation, Defendant.

No. CIV.A.03–A–665–E.

United States District Court, M.D. Alabama, Eastern Division.

Sept. 29, 2003.

David M. Cowan, Ted L. Mann, Birmingham, AL, for Plaintiffs.

Larry B. Childs, Julia B. Cooper, Birmingham, AL, for Defendants.

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This matter is before the court on a Motion for a Stay and to Compel Arbitration (doc. # 4) filed by the Defendant AmSouth Bank (hereinafter "AmSouth" or "Defendant") in response to Plaintiffs' Complaint. The Defendant also filed a Motion to Strike (doc. # 11) that is before this court.

Linda L. Pitchford and Jerry L. Hall (hereinafter "Plaintiffs") filed their Class Action Complaint in this court on June 24, 2003, alleging violation of the Equal Credit Opportunity Act 15 U.S.C. § 1691(a)(1). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

The Defendant contends that the Plaintiffs are required by contract to submit these claims to arbitration and, therefore, has filed this Motion to Compel Arbitration. Pursuant to 9 U.S.C. § 3, the Defendant seeks to have the trial of the action stayed "until such arbitration has been had

in accordance with the terms of the agreement." For reasons to be discussed, the Motion for a Stay and to Compel Arbitration is due to be GRANTED and the Motion to Strike is due to be Denied.

## II. FACTS

The Complaint alleges the following facts:

On May 10, 2003, Linda L. Pitchford and Jerry L. Hall, residents of Tallapoosa County, Alabama, purchased a 2000 GMC pickup from Ben Atkinson Chevrolet, an automobile dealership in Elmore County, Alabama. As part of the transaction, the automobile dealership arranged for indirect lending for the purchase of the truck from AmSouth Bank. AmSouth, an Alabama corporation with its principal place of business in Birmingham, Alabama does business through an agent in Tallapoosa County, Alabama. The Defendant does business in numerous states, including but not limited to Alabama, Florida, Tennessee, Mississippi, Louisiana, and Georgia. Ms. Pitchford was the primary borrower; Mr. Hall co-signed on the retail installment contract to finance the purchase of the truck. The Plaintiffs were quoted by the lender an annual percentage rate of 5.25% to finance $19,375.00.

The Plaintiffs allege that the Defendant systematically discriminates in the extension of credit transactions on co-signed loans where the buyer and co-buyer are not spouses. This information is then allegedly systemically withheld from individuals like the Plaintiffs, who are not allowed access to the rate sheets published by the Defendant to auto dealers, thereby preventing reasonable discovery of this practice. The Plaintiffs state that the Defendant engages in an allegedly unlawful practice of charging anywhere from 1–2% more in annual percentage rate for automobile loans, which are entered into between co-signatories who are not spouses.

The Plaintiffs assert that the Defendant has engaged in thousands of credit transactions in which it has charged a higher interest rate on co-signed loans, where the co-signer is not a spouse. The Plaintiffs contend that the Defendant has reaped substantial financial benefits on these thousands of loans to the detriment of Plaintiffs and other similarly situated co-signatories in credit transactions.

Submissions in support of the Defendant's motion established that the financing extended by AmSouth to the Plaintiffs in connection with the purchase of their 2000 GMC pickup is evidenced by an Installment Sale Contract and Security Agreement, which the Plaintiffs executed on May 10, 2000. Affidavit of Danny Davis and Exhibit A thereto, attached to Motion for a Stay and to Compel Arbitration. Although the agreement was entered into by the Plaintiffs and Ben Atkinson Chevrolet, Inc., after its execution it was purchased and assigned to the Defendant. *Id.* The agreement contains an arbitration provision that states:

**Arbitration.** Subject to the provisions of the next paragraph below, any controversy, claim, dispute or issue related to or arising from (A) the interpretation, negotiation, execution, assignment, administration, repayment, modification, or extension of this Agreement; (B) any charge or cost incurred pursuant to this Agreement; (C) the collection of any amounts due under this Agreement or any assignment thereof; (D) any alleged tort related to or arising out of this Agreement or (E) any breach of any provision of this Agreement, shall be settled in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules"). Any disagreement as to whether a particular dispute or claim is subject to arbitration under this paragraph shall be decided by arbitration in

accordance with the provisions of this paragraph. Commencement of litigation by any person entitled to demand arbitration under this paragraph shall not waive any right that person has to demand arbitration with respect to any counterclaim or other claim that may be made against that person, whether in relating to, or arising out of such litigation, or otherwise. The Expedited Procedures of the AAA Rules shall apply in any dispute where the aggregate of all claims and the aggregate of all counterclaims is an amount less than $50,000. The arbitrator(s) may award all remedies that a court could award. Judgment upon any award rendered by the arbitrator(s) in any such arbitration may be entered in any Court having jurisdiction thereof. Any demand for arbitration under this Agreement shall be made no later than the date when any judicial action upon the same matter would be barred under any applicable statute of limitations. Any dispute as to whether the statute of limitation bars the arbitration, of such matter shall be decided by arbitration in accordance with the provisions of this paragraph. The locale of any arbitration proceedings under this Agreement shall be in the county where this Agreement was executed or such other location as is mutually acceptable to all parties. We shall initially pay the reasonable filing fees and costs imposed under the AAA Rules for the arbitration proceeding. The arbitrator(s) may permit us to recover such filing fees and costs from you. You will be responsible for your own attorneys' fees unless otherwise provided by applicable law. The arbitrator(s) shall establish such reasonable procedures as may be necessary for the reasonable exchange of information between the parties prior to such arbitration. Any arbitration under this paragraph shall be on an individual basis between the parties to this Arbitration only and shall not be commenced as a member or representative of or on behalf of a class of persons, it being the intention of the parties that there shall be no class action arbitration under this Agreement. All parties to this Agreement specifically acknowledge and agree that this Agreement evidences a "transaction involving commerce" under the Federal Arbitration Act, and each party to this Agreement, hereby waives, and relinquishes any right to claim otherwise. WITH RESPECT TO DISPUTES SUBMITTED TO ARBITRATION, YOU AND WE EACH WAIVE THE RIGHT TO TRIAL BY JURY. *Id.*

## III. ARBITRATION STANDARD

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any … contract evidencing a transaction involving commerce … [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

## IV. DISCUSSION

The Plaintiffs do not dispute that the transaction involves interstate commerce. The Federal Arbitration Act "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" *Citizens Bank v.*

*Alafabco, Inc.* —— U.S. ——, ——, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003) (quoting *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). As indicated by the Court, "no elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause." *Citizens Bank,* —— U.S. at ——, 123 S.Ct. at 2041. This transaction involves a commercial loan made by AmSouth, a regional bank, to the Plaintiffs for the purposes of financing the purchase of a truck. *Id.* This constitutes interstate commerce; consequently, the arbitration agreement is within the scope of the Federal Arbitration Act. *Id.*

### A. Failure to Apprise that Statutory Rights Were Subject to Arbitration

■ The Plaintiffs contend that the arbitration agreement does not fairly apprise them that their statutory rights are subject to arbitration. "An arbitration agreement that purports to cover statutory claims must contain terms that generally and fairly inform the signatories that it covers statutory claims." *Paladino v. Avnet Computer Tech., Inc.* 134 F.3d 1054, 1059 (11th Cir.1998). The court in *Paladino* indicated that the language of the arbitration agreement did not adequately inform the employee that statutory claims were subject to arbitration. *Id.* The arbitration agreement in *Paladino* states "in one clause that it covers 'any controversy or claim arising out of or relating to' her employment or termination, and states in another clause that arbitrators shall have authority to award damages for 'breach of contract only.'" *Id.* The court noted that the second clause "muddies the waters considerably" and that when combined these clauses are "confusing." *Id.* at 1057, 1059. The Plaintiffs do not contend that there is any contradictory language that operated to confuse or prevent them from

being able to understand the arbitration agreement; rather, they rely on the broad nature of the language in the arbitration agreement. Plaintiffs' Brief in Opposition to Defendant's Motion for a Stay and to Compel Arbitration at 16 (hereinafter "Plaintiff's Opposition"). "An arbitration agreement [, however,] need not specifically list every federal or state statute it purports to cover." *Brown v. ITT Consumer Financial Corp.,* 211 F.3d 1217, 1222 (11th Cir.2000). The court will accept broad statements for defining the scope of arbitration. *Anders v. Hometown Mortg. Services, Inc.,* 346 F.3d 1024, 1028, 2003 WL 22209334(11th Cir.2003) (accepting an arbitration agreement that "could not have been any broader" that applied to "any" dispute). For example, in *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992), the court found that Title VII claims were subject to arbitration where parties agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person that is required to be arbitrated under the rules, constitution or by-laws of the organizations with which I register". In light of *Anders* and *Bender,* this arbitration agreement fairly apprises the Plaintiffs that their statutory rights are subject to arbitration.

### B. Consistency with Remedial Purpose of the ECOA

■ The Plaintiffs contend that arbitration is inconsistent with the remedial purpose of the Equal Credit Opportunity Act (hereinafter "ECOA"). Plaintiffs' Opposition at 12–17. "Statutory claims [, however,] may be the subject of an arbitration agreement." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). By submitting to arbitration, a party does not surrender or forego substantive statutory rights; rather, a party agrees to an arbitral, rather than a judicial forum for the

resolution of claims related to these rights. *Id.* at 26, 111 S.Ct. 1647. Although not all statutory rights are appropriate for arbitration, "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* The burden is on the party seeking to avoid arbitration, the Plaintiffs, to demonstrate "that Congress intended to preclude a waiver of a judicial forum for" ECOA claims. *Id.* Under the *McMahon* test, courts consider three factors to determine if Congress intended to preclude waiver of a judicial forum: (1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exists. *Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268 (11th Cir.2002) (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). When a court applies this test "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647. The Plaintiffs assert that the arbitration agreement inherently conflicts with the remedial purpose of the ECOA for several reasons, including the restriction on class actions, the awarding of attorney's fees and shifting of arbitration costs, the impact on legal representation, and the procedural inadequacies of class action administration by the American Arbitration Association (AAA).

### 1. Arbitration Agreement that Precludes Class Actions

Plaintiff contends that the arbitration agreement's restriction on class actions de-

feats the purpose of the ECOA. The ECOA authorizes remedies for suits brought in an individual capacity or in the form of a class action. 15 U.S.C. § 1691e. The arbitration agreement excludes the possibility of a class action arbitration. Affidavit of Danny Davis at Exhibit A.[1]

The plaintiff in *Gilmer* argued to the Supreme Court that preventing the use of class actions as a means of seeking redress in an arbitration agreement was inconsistent with the ADEA. *Gilmer,* 500 U.S. at 32, 111 S.Ct. 1647. The Court stated that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.*

Similarly, the Eleventh Circuit found that the enforcement of arbitration agreements that prevented parties from seeking redress through class actions was not inconsistent with 15 U.S.C. § 1691(a)(3) of the Equal Credit Opportunity Act. *Bowen v. First Family Fin. Servs., Inc.,* 233 F.3d 1331, 1338 (11th Cir. 2000) ("we hold that for purpose of the ECOA, specifically 15 U.S.C. § 1691(a)(3), Congress did not create a non-waivable right to pursue TILA claims in a judicial forum, either individually or through a class actions."). The Plaintiffs raise their claim under 15 U.S.C. § 1691(a)(1), not (a)(3), but fail to distinguish why the court should treat claims brought pursuant to one subsection of the same statute differently than the other for purposes of the waivability of class actions. The Plaintiffs contend that the Equal Credit Opportunity Act bars discrimination on the basis of

---

1. "Any arbitration under this paragraph shall be on an individual basis between the parties to this Arbitration only and shall not be commenced as a member or representative of or on behalf of a class of persons, it being the intention of the parties that there shall be no class action arbitration under this Agreement."

marital status, but it also bars discrimination on the basis of exercising one's rights under the Truth in Lending Act as in *Bowen.* 15 U.S.C.A § 1691(a)(1), (a)(3). Plaintiffs argue that the amendment of the ECOA to increase the potential punitive damage recoveries in class action lawsuits was designed to encourage such claims and to encourage creditors to comply with the ECOA. This argument also fails to distinguish (a)(1) from (a)(3), because the punitive damage award amendment, which was enacted in 1976 long before *Bowen,* applies to the failure of creditors to "comply with *any* requirement imposed under this subchapter." 15 U.S.C.A. § 1691e(b) (emphasis added). In altering the potential punitive damage awards available in a class action lawsuit, Congress made no distinction between violations of (a)(1) and (a)(3).

The Plaintiffs argue that the remedial purpose of the ECOA can not be served if parties can waive in arbitration agreements the opportunity to seek relief through a class action. In addition, however, to the Plaintiffs retaining their substantive rights under the ECOA, which can be pursued in the arbitral forum, Congress also advanced the ECOA's remedial purpose by retaining enforcement powers for administrative agencies. 15 U.S.C.A. § 1691c, e. Both the Supreme Court and the Eleventh Circuit have considered this to be a relevant factor in determining whether waiver of class action status would be appropriate. *Gilmer,* 500 U.S. at 32, 111 S.Ct. 1647; *Randolph v. Green Tree Fin. Corp.,* 244 F.3d 814, 818 (2001) (citing *Johnson v. West Suburban Bank,* 225 F.3d 366, 375 (3d Cir.2000)). The Court noted in *Gilmer* that "it should be remembered that arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer,* 500 U.S. at 32, 111 S.Ct. 1647. Similarly, the Eleventh Circuit found, in part, because the Truth in Lending Act provided for enforcement by ad-

ministrative agencies, that precluding class actions under an arbitration agreement is not inconsistent with the TILA. *Randolph,* 244 F.3d at 818 (citing *Johnson,* 225 F.3d at 375). The Third Circuit in *Johnson* reasoned that its conclusion "that there is no irreconcilable conflict between the TILA's social policy goals and arbitration of claims that could have been heard as part of a class action is bolstered by the statute's administrative enforcement provisions." *Johnson,* 225 F.3d at 375. The Third Circuit indicated that the administrative enforcement provisions "offer meaningful deterrents to violators of the TILA if private enforcement actions should fail to fulfill that role." Id. The ECOA similarly provides for a comprehensive scheme of administrative enforcement. 15 U.S.C.A. § 1691c. Furthermore, if the relevant administrative agency is "unable to obtain compliance with section 1691 of this title[,]" Congress authorizes the administrative agencies to refer the matter to the Attorney General to bring an action to obtain appropriate relief including actual and punitive damages and injunctive relief. 15 U.S.C.A. § 1691e. In view of these factors, the Eleventh Circuit's holding in *Bowen,* and the federal policy of favoring arbitration, the Plaintiffs fail to persuade this court that Congress intended for class actions to be non-waivable for purposes of 15 U.S.C. § 1691(a)(1). *Bowen,* 233 F.3d at 1338. Although the ECOA provides for class actions, the right to file a class action may be waived.

### 2. Costs and Attorney's Fees

█ The Plaintiffs contend that the arbitration agreement violates the ECOA by failing to provide for their recovery of costs and attorney's fees and by empowering the Defendant to recover filing fees and costs from them. Plaintiffs' Opposition at 12–13; Plaintiffs' Response to Am-

South's Reply Brief at 2–3.[2] Under the ECOA, in the event of a successful action, a plaintiff is awarded costs and attorney's fees. 15 U.S.C.A. § 1691e(d). The arbitration agreement does not deprive the Plaintiffs of these rights. It provides that "you will be responsible for your own attorney's fees unless otherwise provided by applicable law." Affidavit of Danny Davis, at Exhibit A. If the Plaintiffs are successful, the applicable law, the ECOA, would provide otherwise, thereby entitling the Plaintiffs to attorney's fees. 15 U.S.C.A. § 1691e(d). With regard to costs, the agreement provides that AmSouth shall initially pay the filing fees and costs, but also allows the arbitrator to permit AmSouth to recover these costs. Affidavit of Danny Davis at Exhibit A. Under the agreement, the arbitrator "may award all remedies that a court could award[,]" which would include the Plaintiff's costs. *Id.;* 15 U.S.C.A. § 1691e(d). Consequently, whether the costs are never incurred by the Plaintiffs through the arbitrator declining to award AmSouth recovery or the Plaintiffs recover their costs after a successful action, the Plaintiffs still retain their right to recover costs.

The Plaintiffs contend that the potential awarding of filing fees and costs to the Defendant creates a cost shifting procedure that is inconsistent with the remedial purpose of the ECOA. The Plaintiffs also assert that "the undisputed costs to the Plaintiffs of pursuing this ECOA action would constitute 'prohibitive' costs." Plaintiffs' Response to AmSouth's Reply Brief at 3. The Eleventh Circuit decision in *Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255, 1261 (11th Cir.2003),

guides the court in its consideration of the Plaintiffs' contentions. The court noted that "whether Musnick will, in fact, incur attorneys' fees in this matter depends entirely on whether he prevails in arbitration. If he does, he will incur no fees at all under the agreement's 'loser pays' provision." *Id.* If Musnick wins his arbitration, "obviously, he will not have been deprived of any statutory rights or remedy by the mandatory arbitration." *Id.* In this case, AmSouth initially pays the costs and fees associated with the arbitration, but the arbitrator "may permit [AmSouth] to recover such filing fees and costs" from the Plaintiffs. Affidavit of Danny Davis at Exhibit A. As opposed to the presence of crippling undisputed costs that prevent the Plaintiffs from effectively vindicating their rights, it is entirely possible that the Plaintiffs will have no costs. If the arbitrator does award costs and fees that the Plaintiffs believe deprive them of their rights under the ECOA, they may seek judicial review. *Musnick,* 325 F.3d at 1261. The Eleventh Circuit has noted that "arbitration awards may be vacated if they are in manifest disregard of the law." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Furthermore, "judicial review of arbitration awards is sufficient to protect statutory rights." *Musnick,* 325 F.3d at 1261 (citing *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366 (7th Cir. 1999)) The Supreme Court determined in *Green Tree Fin. Corp v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), that "the risk that Randolph will be saddled with prohibitive costs is too specu-

---

**2.** The Plaintiffs assert that "AmSouth does not dispute the fact that arbitration agreement provides the arbitrator with authority to shift cost in only one (1) direction—that is, from Linda Pitchford to Jerry Hall." Plaintiffs' Response to AmSouth's Rely Brief at 3. Actually, AmSouth does dispute this fact: "Rather than

restricting the Plaintiffs' right under the ECOA to recover costs and fees if they prevail, the Agreement specifically preserves those rights." Defendant's Reply Memo in Support of Motion to Stay and to Compel Arbitration at 6.

lative to justify the invalidation of an arbitration agreement." The Eleventh Circuit in *Musnick* further clarified how speculative is too speculative when addressing whether to invalidate an arbitration agreement. *Musnick*, 325 F.3d at 1261–62. After *Musnick*, the imposition of conditional costs that may or may not come into effect, whether dependent upon an automatic loser pays model or to be determined under particular circumstances by an arbitrator, is too speculative to warrant invalidation of an arbitration agreement. *Id.* "Once the arbitrator has reached the issues of costs and fees, those items will no longer be speculative, and any issue presented thereby will be ripe for decision." *Id.* at 1262.

The Plaintiffs argue that if an arbitration agreement such as this one were enforced they would have difficulty obtaining counsel. The Plaintiffs counsel attests that "neither he nor any member of his firm is prepared or willing to continue as counsel in the event this case proceeds as an individual arbitration." Plaintiffs' Response to AmSouth's Reply Brief at 5. Plaintiffs' counsel terms pursuing this matter through arbitration "financial suicide." *Id.* The Plaintiffs' misunderstanding of the arbitration agreement as failing to provide for attorney's fees or recovery of costs explains this conclusion. Plaintiffs' Opposition at 13; Plaintiffs' Response to AmSouth's Rely Brief at 2–5; Exhibit E. As the court previously concluded, attorney's fees and costs could be awarded to the Plaintiffs under this arbitration agreement; consequently, this concern is addressed through the ECOA. 15 U.S.C.A. § 1691e(d); *see also Snowden v. Check-Point Check Cashing*, 290 F.3d 631, 638–639 (4th Cir.2002) (finding that statutory attorney's fee provision adequately assured concerns regarding inability to obtain counsel in an arbitration that excluded class actions).

## 3. Procedural Inadequacy of the American Arbitration Association

Plaintiffs contend that American Arbitration Association (hereinafter "AAA") is not an appropriate forum for the arbitration of this case because its rules are silent on availability of class actions and because "AAA does not even have any rules in place to govern the administration of class arbitrations." The Plaintiffs, however, do not have standing to raise this claim because the arbitration agreement in this case excludes the possibility of a class action. Consequently, even if AAA's procedures for handling class actions are inadequate, it will not harm or injure the Plaintiffs, whose arbitration will be handled on an individual basis. The issue of the possible procedural inadequacy of the AAA with regard to handling class actions is moot with regard to this action.

## C. Unconscionability of this Contract

■ Under the FAA, state law contract defenses can invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically. *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir.2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (stating that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements")). Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract that the party seeking avoidance must demonstrate with substantial evidence. *Mason v. Acceptance Loan Co., Inc.*, 850 So.2d 289, 300 (Ala.2002). The State of Alabama's well established test for determining unconscionability is as follows: "(1) whether there was an absence of meaningful choice on one party's part, (2) whether the con-

tractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided or patently unfair terms in the contract". *Id.* at 301 n. 7. Because Alabama law allows unconscionability to invalidate contracts generally, this defense, consistent with the FAA, may also invalidate the arbitration agreement in this case, if the Plaintiffs demonstrate unconscionability with substantial evidence. *Bess,* 294 F.3d at 1307.

■■■ The Plaintiffs contend that "they were given no meaningful choice into whether or not they could accept or reject the arbitration agreement." Plaintiffs' Opposition at 18. Therefore, they assert that the contract is a contract of adhesion and unenforceable as a matter of law. *Id.* Although a party would not have to spend a considerable amount of time and effort to find alternatives, Alabama Courts, nevertheless, do require that a party "shop around" in order to show that there was no meaningful alternative. *American Gen. Fin., Inc. v. Branch,* 793 So.2d 738, 751–52 (Ala.2000). Although Plaintiffs have compiled an impressive list of GMC dealers in the State of Alabama that require arbitration agreements to be signed for the purchases of used vehicles, there is no indication that the Plaintiffs conducted any search before signing the arbitration agreement. Plaintiffs' Opposition at Exhibit A, B, C, D.[3] Repeatedly, the Alabama Supreme Court has indicated that an important determining factor in showing that a party has no meaningful alternative is whether they "shopped around." *Conseco Fin. Corp.–Alabama v. Boone,* 838 So.2d

370, 373 (Ala.2002); *Green Tree Fin. Corp. v. Lewis,* 813 So.2d 820, (Ala.2001) (noting that "nothing in the record suggests that the [party] attempted to 'shop around' for a financing arrangement that would not call for arbitration of disputes"); *Green Tree Fin. Corp. v. Vintson,* 753 So.2d 497, 503–04 (Ala.1999) (indicating that a party failed to show that no reasonable alternative existed, in part, because they did not inquire as to whether the contract could be signed without the arbitration agreement and for failing to see if an independent loan provider would have required signing an arbitration agreement); *Branch,* 793 So.2d at 751–52 (distinguishing between two plaintiffs with regard to the availability of a meaningful alternative, in part, because one of the plaintiffs (Reeves) failed to shop around for service that did not require the signing of an arbitration agreement). Ms. Pitchford in her affidavit indicated that it was her "understanding that GMC automobile/truck dealers in Alabama require arbitration agreements in all of their sales." Plaintiffs' Opposition at Exhibit A. There is no indication in the pleadings that her understanding was contemporaneous with the acquisition of the truck or of the basis for Ms. Pitchford's conclusion. *Id.;* Plaintiffs' Opposition. The Plaintiffs failed to show that they "shopped around," thus under Alabama law, they cannot demonstrate that they were left without a meaningful alternative.

■■■ Even assuming arguendo that this Court were to reach the opposite conclusion, determining that the Plaintiffs were without a meaningful alternative, this is only one factor and does not standing

---

**3.** The Defendant has moved this court to strike the affidavits of Jennifer D. Mize, Andrea D. Glover, and Melissa S. Wade, and to partially strike the affidavits of Linda L. Pitchford and K. Stephen Jackson. The court has fully considered these affidavits in addressing the issues presented by this case; however, as the affidavits in question do not establish sufficient grounds to deny the Defendant's Motion for a Stay and to Compel Arbitration, the Defendant suffers no prejudice. The Defendant's Motion to Strike is rendered moot, thus it is due to be denied.

alone render the contract unconscionable. Under Alabama law, the court still must find that the terms are grossly favorable to the party that has the overwhelming bargaining power. *Branch,* 793 So.2d at 748; *see also Roberson v. Money Tree,* 954 F.Supp. 1519 (M.D.Ala.1997). Plaintiffs' argument regarding the elimination of the possibility of class action lawsuits warrants further discussion with regard to whether it renders this contract unconscionable.

In *Leonard v. Terminix Int'l,* 854 So.2d 529, 539 (Ala.2002), the Alabama Supreme Court found a provision that restricted the Plaintiffs from being able to bring a class action to be unconscionable under Alabama State law. The court found the arbitration agreement's restriction on the Leonards, the plaintiffs, effectively prevented them from seeking practical redress because "the expense of pursuing their claim far exceeds the amount in controversy." *Id.* The costs of arbitrating the Leonards' claim (at least 1,100 dollars) exceeded the dollar value of their claim (less than 500 dollars), which effectively made arbitration an illusory forum for vindicating their substantive rights. *Id.* at 535–36; 539 (See, J., dissenting). Justice See writing in dissent noted that "the majority accepts on its face the Leonards' assertion that the arbitration clause in the termite-protection contract requires them to pay prohibitively high arbitration costs and reasons from that premise that the arbitration clause is unconscionable because it denies the Leonards a remedy." *Id.* at 539.

▄▄▄ In this case, the Plaintiffs' recovery will not necessarily be smaller than the

costs to the Plaintiffs of pursuing this matter through arbitration. Unlike in *Terminix,* pursuant to this contract, the initial costs are paid by the Defendant. Additionally, if the Plaintiffs prevail, they will be entitled to attorney's fees and costs under the ECOA. *Id.*; 15 U.S.C. § 1691e(d).[4] In *Snowden,* a plaintiff argued to the Fourth Circuit that her arbitration agreement was unconscionable and that the elimination of class actions as vehicle for bringing claims would essentially remove her ability to obtain counsel. *Snowden,* 290 F.3d at 638–639. The court indicated that because the plaintiff was entitled to attorney's fees under the applicable law that the arbitration agreement was not unconscionable and that she would be able to obtain counsel. *Id.* The Supreme Court stated that "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647. The Alabama Supreme Court's concerns in *Terminix* addressed a situation where the plaintiffs could not vindicate their rights because the costs of arbitration would exceed the potential recovery. *Terminix,* 854 So.2d at 535–36; 539 (See, J., dissenting). In this case, the Plaintiffs can vindicate their rights in the arbitral forum. Ms. Pitchford and Mr. Hall, if successful in their action, are entitled to attorney's fees and costs, thus this case does not present a situation akin to *Terminix.*

---

4. The Plaintiffs argue that the punitive damage award cap under the ECOA and the Supreme Court limiting the recovery of punitive damages effectively prevents this matter from being properly addressed in an arbitral forum. Plaintiff's Response to AmSouth's Reply Brief at 3–4. If the Plaintiffs' objection is to the limitations on the recovery of punitive damages imposed by ECOA and the United States Supreme Court in *State Farm v. Campbell,* this forum is not appropriate for that argument. If the Plaintiffs' objection is that a lawyer will not pursue the case given a lower potential recovery, then that concern is already addressed by the provisions of the ECOA that provide for costs and attorneys fees.

1297

## V. CONCLUSION

For the foregoing reasons, and especially given the liberal federal policy favoring arbitration, this court will not deny enforcement of the arbitration clause. If, however, the Plaintiffs incur substantial costs in arbitration which preclude them from effectively vindicating their federal statutory rights, Plaintiffs may petition this court for review and relief.

The Defendant's Motion to Stay[5] and Compel Arbitration is due to be GRANTED. The Defendant's Motion to Strike is due to be DENIED as moot. A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this date, it is ORDERED as follows:

1. Defendant's Motion to Stay and Compel Arbitration (Doc. # 4) is GRANTED, and the parties are required to arbitrate their dispute in accordance with the Installment Sale Contract and Security Agreement.

2. Pursuant to 9 U.S.C. § 3, this action is hereby STAYED pending the above ordered arbitration. While the Clerk of this court is DIRECTED to close this action for statistical purposes, the court retains jurisdiction and the parties may request reinstatement at any time that they require the court's intervention.

3. Defendant's Motion to Strike (Doc. # 11) is DENIED as moot.

4. The parties are DIRECTED to file a Notice with the court when arbitration has been concluded.

---

5. Section 3 of the FAA governs stays of court proceedings where the issues to be litigated are referable to arbitration. This section requires a federal court, upon being satisfied that an issue is properly arbitrable, and upon application of one of the parties, to stay the trial of the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.